PEOPLE v BLADEL (AFTER REMAND)

PEOPLE v JACKSON

Docket Nos. 69615, 69749. Argued April 4, 1984 (Calendar Nos. 7, 8). —Decided December 28, 1984. Released January 29, 1985. Affirmed 475 US — (April 1, 1986).

Rudy Bladel was convicted by a jury in the Jackson Circuit Court, Russell E. Noble, J., of three counts of first-degree murder. The defendant challenged the admission of a post-arraignment confession on the ground that it had been made without the requested assistance of counsel. The Court of Appeals, Beasley, P.J., and Bashara and MacKenzie, JJ., affirmed, upholding the decision of the trial court that the defendant had knowingly and understandingly waived his right to counsel (Docket No. 48082). In lieu of granting leave to appeal, the Supreme Court remanded the case to the Court of Appeals for reconsideration in light of its decision in *People v Paintman* and *People v Conklin,* 412 Mich 518 (1982), that statements made to police without the requested assistance of counsel were inadmissible. On remand, the Court of Appeals, Beasley, P.J., and R. B. Burns and MacKenzie, JJ., reversed in an opinion per curiam (Docket No. 63834). The people appeal.

Robert B. Jackson was convicted by a jury in the Wayne Circuit Court, Horace W. Gilmore, J., of second-degree murder and conspiracy to commit second-degree murder. The defendant challenged the admission of post-arraignment statements made in the absence of counsel. The Court of Appeals, Danhof, C.J., and Bronson, J. (J. H. Gillis, J., concurring in part and dissenting in part), affirmed the defendant's conviction of second-degree murder, but vacated the conviction of conspiracy to commit second-degree murder on the ground that the defendant

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 21A Am Jur 2d, Criminal Law §§ 973, 988 *et seq.*

What constitutes "custodial interrogation" within rule of *Miranda v Arizona* requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.

could not have conspired to commit a crime that by definition is committed without premeditation and deliberation (Docket No. 51655). The defendant appeals.

In an opinion by Justice Cavanagh, joined by Chief Justice Williams and Justices Kavanagh and Levin, the Supreme Court *held:*

A defendant may not be interrogated by the police following a request for counsel before an arraigning magistrate until counsel has been made available; where a defendant chooses to reinitiate communications, exchanges, or conversations with the police, he must be sufficiently aware of his Fifth and Sixth Amendment rights to counsel to effectuate a voluntary, knowing, and intelligent waiver. Before commencing interrogation of a defendant, the police have an obligation to determine whether the defendant has been arraigned and has requested counsel.

1. The right to counsel is guaranteed by both the Fifth and Sixth Amendments to the United States Constitution, as well as the Michigan Constitution. However, the rights are distinct and not necessarily coextensive. An accused has a Fifth and Fourteenth Amendment right to have counsel present during a custodial interrogation in order to protect the Fifth Amendment privilege against compulsory self-incrimination. Once an accused invokes his right to have counsel present during custodial interrogation, the police must refrain from further interrogation until counsel is made available, unless the accused initiates further communications, exchanges, or conversations with the police. The Fifth Amendment right to counsel is not limited to custodial interrogations conducted prior to arraignment.

2. The Sixth Amendment guarantees that in all criminal prosecutions an accused has the right to assistance of counsel for his defense. The right attaches only at or after the initiation of adversary judicial proceedings against the accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment. The accused is entitled to counsel not only at trial, but at all critical stages of the prosecution, *i.e.,* those stages where counsel's absence might derogate from the accused's right to a fair trial. Regardless of whether an accused is in custody or subjected to formal interrogation, the Sixth Amendment right to counsel exists whenever the police attempt to elicit incriminating statements. The right does not depend upon a request by the accused, and courts will indulge in every reasonable presumption against waiver.

3. In these cases, because the defendants were clearly sub-

jected to custodial interrogation when they made their post-arraignment confessions, their Fifth Amendment right to counsel had attached. In addition, because they were interrogated subsequent to arraignment, they were also entitled to counsel under the Sixth Amendment. However, the defendants' requests to the arraigning magistrates for appointment of counsel implicated only their Sixth Amendment right to counsel. Although defendants were in custody at the time of their arraignments, they were not subjected to interrogation. In addition, they did not specifically request counsel for any subsequent custodial interrogations which might be conducted. The findings of the trial courts that the defendants never invoked their Fifth Amendment right to counsel before or during their post-arraignment interrogations and that they knowingly and voluntarily waived their right to counsel prior to making their statements were not clearly erroneous.

4. The defendants were given standard *Miranda* warnings prior to their post-arraignment interrogations. However, these warnings were designed to advise an accused only of his Fifth Amendment rights. The Sixth Amendment right to counsel is considerably broader than its Fifth Amendment counterpart since it applies to all critical stages of a prosecution. Had the defendants invoked their Fifth Amendment right to counsel, all further interrogation would have been barred until they had an opportunity to consult with counsel, since they did not reinitiate further conversations with the police. Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation of a defendant who makes an identical request to a judge. The Sixth Amendment right to counsel is entitled to be protected by procedural safeguards at least as stringent as those designed for the judicially created Fifth Amendment right. Thus, at a minimum, where an accused requests counsel before the arraigning magistrate, the police may not conduct further interrogations until counsel has been made available to the accused, unless the accused initiates further communications, exchanges, or conversations with the police. If a defendant chooses to reinitiate communications, he must be sufficiently aware of both his Fifth and Sixth Amendment rights to effectu-

ate a voluntary, knowing, and intelligent waiver of each right. In addition, before commencing interrogation, the police have an obligation to determine whether an accused has been arraigned and requested counsel. Because the defendants requested counsel during their arraignments, but were not afforded an opportunity to consult with counsel before the police initiated further interrogations, their post-arraignment confessions were improperly obtained and must be suppressed.

5. The finding of the trial court in *Jackson* that pre-polygraph confessions by the defendant were not improperly induced by threats or promises was not clearly erroneous. Post-polygraph confessions, however, were inadmissible because they were obtained during an unnecessary prearraignment delay that was used as a tool to extract the statements. A new trial is required because admission of all the confessions may have made a difference in the jury's determination of credibility.

*Bladel,* affirmed.

*Jackson,* reversed.

Justice Ryan, joined by Justice Brickley, concurring in part and dissenting in part, stated that because the rule that statements made without the requested assistance of counsel derives from analysis of the United States Constitution it is unnecessary and inappropriate to base the result in these cases on the Michigan Constitution. In addition, the record in *Jackson* does not support the conclusion of the majority that the defendant's post-polygraph statements resulted from a prearraignment delay employed as a tool to extract them.

Justice Boyle, dissenting, agreed with Justice Ryan that the record in *Jackson* did not support the conclusion that the defendant's post-polygraph statements were the result of delay designed to extract them, and would also find that Jackson's post-arraignment statement which was a repetition of earlier statements in which he confessed that he had done the shooting, if error, was harmless in light of the overwhelming evidence. In *Bladel,* the Sixth Amendment right to counsel was waived.

118 Mich App 498; 325 NW2d 421 (1982) affirmed.

114 Mich App 649; 319 NW2d 613 (1982) reversed.

### Opinion of the Court

1. Criminal Law — Right to Counsel — Request at Arraignment — Waiver.

A defendant may not be interrogated by the police following a request for counsel before an arraigning magistrate until counsel has been made available; where a defendant chooses to

reinitiate communications, exchanges, or conversations with the police, he must be sufficiently aware of his Fifth and Sixth Amendment rights to counsel to effectuate a knowing and intelligent waiver (US Const, Ams V, VI; Const 1963, art 1, §§ 17, 20).

2. Criminal Law — Right to Counsel — Request at Arraignment — Waiver.

Before commencing interrogation of a defendant, the police have an obligation to determine whether the defendant has been arraigned and whether a request for counsel was made by the defendant before the arraigning magistrate (US Const, Ams V, VI; Const 1963, art 1, §§ 17, 20).

3. Criminal Law — Right to Counsel — Self-Incrimination — Waiver.

An accused has a right to have counsel present during a custodial interrogation conducted prior to or after arraignment to protect the privilege against compulsory self-incrimination; once an accused invokes the right, the police must refrain from further interrogation until counsel is made available unless the accused initiates further communications, exchanges, or conversations (US Const, Ams V, XIV).

4. Criminal Law — Right to Counsel — Adversary Proceedings.

An accused has a right to the assistance of counsel for his defense in all criminal prosecutions that attaches only at or after the initiation of adversary proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment; the accused is entitled to counsel not only at trial, but at all critical stages of the prosecution, *i.e.,* those stages where counsel's absence might derogate from the accused's right to fair trial (US Const, Am VI).

5. Criminal Law — Right to Counsel — Adversary Proceedings.

The right to counsel attaches regardless whether an accused is in custody or is subjected to formal interrogation; the right exists whenever the police attempt to elicit incriminating statements, and does not depend upon a request for counsel by the accused (US Const, Am VI).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Brian E. Thiede,* Chief Appellate Attorney, for the people in *Bladel.*

State Appellate Defender (by *Ronald J. Bretz)* for defendant Bladel.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people in *Jackson.*

State Appellate Defender (by *James Krogsrud)* for defendant Jackson.

CAVANAGH, J. The common issue presented in these appeals is whether statements obtained after a defendant has requested appointment of counsel at arraignment are admissible pursuant to the principles enunciated in *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), and *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), *cert den* 456 US 995; 102 S Ct 2280; 73 L Ed 2d 1292 (1982).

I

A

Defendant Bladel was convicted by a jury in July, 1979, of three counts of first-degree premeditated murder.[1] He was sentenced to three concurrent mandatory life sentences. Testimony at trial revealed that three railroad employees were shot to death on December 31, 1978, at the Amtrak station in Jackson, Michigan. Defendant, a disgruntled former railroad employee, was the prime suspect.[2] He was arrested on January 1, 1979, and

---

[1] MCL 750.316; MSA 28.548.

[2] The evidence against defendant was substantial. Shortly before he died, one of the victims indicated that the assailant was a white male. A ticket clerk observed a tall, husky person walking away from the station after the shootings, carrying a soft-sided suitcase. A passerby similarly testified that he observed a stocky man wearing a jacket and cap walking away from the station carrying a case. He entered a

questioned twice by Detective Gerald Rand on January 1 and 2. Defendant was properly advised of his *Miranda*[3] rights before each questioning and agreed both times to talk without an attorney. Defendant admitted being in and around the station on December 30 and 31, 1978, but denied any involvement in the killings. He was released on January 3.

On March 18, 1979, the shotgun used in the killings was found. The weapon had been purchased by defendant two years before the killings. The police also obtained strong scientific evidence linking him to the killings. Defendant was arrested in Elkhart, Indiana, on March 22, 1979. He waived extradition after being advised by a magistrate of his right to a full hearing and representation by counsel.

Defendant was driven back to Jackson the same afternoon. Detective Rand questioned him again that evening. Prior to questioning, defendant was properly advised of his rights, agreed to talk without counsel, and signed a waiver form. He did not confess to the killings.

Defendant was arraigned on Friday, March 23,

nearby hotel. Defendant had rented a room at that hotel on December 30 and 31, 1978.

When defendant was arrested on January 1, 1979, he was wearing a blue nylon jacket and cap and was carrying a brown soft-sided suitcase, which contained a can of gun oil. Defendant first claimed that he had been nowhere near the station, but later stated that he had used the restrooms there twice. He claimed to have recently arrived in Jackson to look for a job, even though it was a holiday weekend.

A 12-gauge shotgun and duck jacket were found in mid-March 1979. Ballistics evidence disclosed that a spent shotgun shell found at the scene of the killings came from the shotgun. The weapon had been purchased by defendant in Elkhart, Indiana, two years before the killings. Fibers found on the gun and the duck jacket and in defendant's suitcase were identical. A speck of human blood was also found on the cap defendant was wearing when he was first arrested.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

1979, in the presence of Detective Rand. Defendant requested that counsel be appointed for him because he was indigent. A notice of appointment was mailed to a law firm that day, but was not received until Tuesday, March 27, 1979. Defendant was not informed during the interim that counsel had been appointed, although he inquired several times.

On March 26, 1979, two police officers interviewed defendant in the county jail. Although the officers were working with Detective Rand on this case, they were not told that defendant had requested counsel. Prior to questioning, the defendant was again properly advised of his *Miranda* rights. When he informed the officers that he had requested counsel, they inquired whether he wished to have an attorney present during questioning. Defendant agreed to proceed without counsel, signed a waiver form, and subsequently confessed to the killings.

Defendant challenged the admissibility of the confession and the three exculpatory statements at a pretrial *Walker*[4] hearing. The trial court ruled that all of the statements were admissible because defendant was properly advised of his rights and had knowingly and understandingly waived them each time.[5]

On appeal, defendant challenged only the admissibility of the confession. The Court of Appeals upheld the trial court's decision and affirmed the convictions.[6] *People v Bladel,* 106 Mich App 397;

[4] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[5] The court acknowledged that the lack of opportunity to consult with counsel before interrogation does affect the voluntariness and effectiveness of a waiver. However, it knew of no case which required suppression under these circumstances.

[6] The Court of Appeals rejected defendant's assertion that interrogation can never occur once a defendant requests counsel. The court

308 NW2d 230 (1981). In lieu of granting leave to appeal, this Court remanded to the Court of Appeals for reconsideration in light of *People v Paintman* and *People v Conklin,* 412 Mich 518; 315 NW2d 418 (1982). On remand, the Court of Appeals summarily concluded that *Paintman* and *Conklin,* when read in conjunction with this Court's remand order, "compelled" reversal. 118 Mich App 498; 325 NW2d 421 (1982). We granted the prosecutor's application for leave to appeal. 417 Mich 885; 330 NW2d 846 (1983).

## B

Defendant Jackson was charged with first-degree murder, conspiracy to commit first-degree murder,[7] and possession of a firearm during the commission of a felony[8] in connection with the death of Rothbe Elwood Perry. He was convicted by a jury in February, 1980, of second-degree murder[9] and conspiracy to commit second-degree murder. He was sentenced to two concurrent life terms.

Mr. Perry was shot and killed in his home in Livonia, Michigan, on July 12, 1979, during an apparent robbery. On July 28, 1979, Mildred Perry (the deceased's wife) and Charles (Chare) Knight were arrested for the murder. Knight subsequently

---

acknowledged that the prosecutor bore a heavy burden in proving a knowledgeable and voluntary waiver and that the police may have acted unethically in obtaining the confession. Nevertheless, the waiver was valid because defendant had been warned by the Indiana magistrate not to talk to police until he met with counsel, he had prior contact with the criminal justice system and understood his rights, he had signed a waiver form, and had not reasserted his right to counsel during the interrogation. Finally, the four-day delay between arraignment and the first meeting with counsel was not unreasonable. There was no evidence that defendant was kept from his attorney in order to obtain a confession.

[7] MCL 750.157a; MSA 28.354(1) and MCL 750.316; MSA 28.548.

[8] MCL 750.227b; MSA 28.424(2).

[9] MCL 750.317; MSA 28.549.

told Livonia police that Mildred Perry had solicited him to kill her husband. He, in turn, had contacted defendant. Knight maintained that defendant and another man had broken into the house and shot the deceased.

Defendant and Michael White were arrested on Monday, July 30, 1979, by Detroit police on an unrelated charge. They were turned over to the Livonia police at approximately 2 p.m. the following day. Defendant was questioned several times on July 31 and gave three similar statements.[10] Defendant admitted breaking into the house to kill Mr. Perry, but maintained that Knight had fired the shots.

On August 1, at approximately 10 a.m., defendant submitted to a polygraph examination after being advised of his *Miranda* rights. When defendant was informed that he had not passed, he told the examiner that he was the shooter and White had accompanied him. Defendant gave substantially similar oral and written statements shortly thereafter to Sergeant William Hoff, one of the officers in charge of the case.[11]

[10] Defendant's first oral statement was given at 3:30 p.m. A similar statement was tape recorded at 5:52 p.m., but was retaped at 8:48 p.m. because of the poor quality of the prior recording. Defendant maintained that he was not advised of his *Miranda* rights until shortly before the first taping and that he had requested an attorney during the first interrogation. He agreed to confess because the police suggested that he might be able to plead to less than first-degree murder. He was also afraid that he would be beaten.

In contrast, several police officers testified that defendant was advised of his rights as he was being transported from Detroit to Livonia and before each statement was given. They denied that defendant had ever requested an attorney. They also denied promising him a "deal" or threatening him. The trial court found the police officers' testimony to be more credible.

[11] Subsequent to these statements, the police reinterrogated Michael White, who had repeatedly denied any involvement. Defendant was brought into the interrogation room to persuade White to confess. This interrogation session was tape recorded. White subsequently confessed to the murder after arraignment.

Defendant, White, Perry, and Knight were arraigned at 4:30 p.m. that afternoon. During arraignment, defendant requested that counsel be appointed for him. Sergeants Hoff and Shirley Garrison were present when defendant requested counsel.

At 10:24 a.m. the next morning, defendant was readvised of his rights by Sergeants Garrison and Hoff and agreed to give another tape-recorded statement to "confirm" that he was the shooter. Defendant had not yet had an opportunity to consult with counsel. When asked whether he had been promised anything for his statement, defendant replied that nothing had been actually guaranteed, but something would be worked out.

Prior to trial, a lengthy *Walker* hearing was conducted. The trial court ruled that all of defendant's statements were admissible because he had been advised of his *Miranda* rights before each statement was given, he never requested an attorney during the interrogations, he knowingly and voluntarily waived his rights each time, no improper promises or threats were made by the police, and the statements were not the result of any illegal delay in arraignment.[12]

In affirming defendant's conviction for second-degree murder,[13] the Court of Appeals upheld the trial court's findings of fact. As to the post-arraignment statement, the Court noted that the original panel in *Bladel* had found a knowledgeable and

[12] However, White's confession was suppressed as being coerced. Primarily on the basis of the recorded interrogation session of August 1, the trial court found that the police had ignored White's requests for counsel and improperly offered plea bargains.

[13] The Court of Appeals vacated defendant's conviction and sentence for conspiracy to commit second-degree murder because the crime could not logically exist. The Court reasoned that defendant could not have conspired to commit a criminal act which by definition is committed without premeditation and deliberation. The prosecutor has not challenged this ruling on appeal to this Court.

voluntary waiver of the right to counsel on almost identical facts. *Edwards* and *Paintman* were distinguished on the grounds that defendant asked for an attorney at arraignment, rather than during police interrogation. This request was "not made in such a way as to effectively exercise the right to preclude any subsequent interrogation" and was unrelated to defendant's Fifth Amendment right to counsel. 114 Mich App 649, 658-659; 319 NW2d 613 (1982). We granted defendant's application for leave to appeal. 417 Mich 885; 330 NW2d 846 (1983).

## II

Defendants argue that their post-arraignment statements were obtained in violation of their Fifth and Sixth Amendment rights to counsel because they asked the arraigning magistrate for appointed counsel. To determine whether these statements are admissible, the following questions must first be resolved:

1) What constitutional right(s) to counsel attached at the post-arraignment interrogations?

2) What right(s) to counsel did defendants invoke when they requested counsel at arraignment?

3) What right(s) to counsel did defendants purportedly waive prior to their post-arraignment interrogations?

## A

The right to counsel is guaranteed by both the Fifth and Sixth Amendments to the United States Constitution, as well as Const 1963, art 1, §§ 17

and 20.[14] However, these constitutional rights are distinct and not necessarily coextensive. See *Rhode Island v Innis,* 446 US 291, 300, fn 4; 100 S Ct 1682; 64 L Ed 2d 297 (1980).

In *Miranda,* the United States Supreme Court declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation in order to protect the accused's Fifth Amendment privilege against compulsory self-incrimination. *Innis, supra,* p 297; *Edwards, supra,* 451 US 481. However, the Fifth Amendment right to counsel attaches only when an accused is in custody, *United States v Henry,* 447 US 264, 273, fn 11; 100 S Ct 2183; 65 L Ed 2d 115 (1980), and subjected to interrogation. *Innis, supra,* p 298; *Kirby v Illinois,* 406 US 682, 688; 92 S Ct 1877; 32 L Ed 2d 411 (1972). Once an accused invokes his right to have counsel present during custodial interrogation, the police must refrain from further interrogation until counsel is made available, unless the accused initiates further communications, exchanges, or conversations with the police. *Edwards, supra,* pp 484-485; *Paintman, supra,* 412 Mich 526. Neither *Miranda* nor its progeny limits the Fifth Amendment right to counsel to custodial interrogations conducted prior to arraignment. Since defendants were clearly subjected to custodial interrogation when they made their post-arraignment confessions, their Fifth Amendment right to counsel had attached.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the

[14] Const 1963, art 1, § 17 provides in relevant part:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

Const 1963, art 1, § 20 provides in relevant part:

"In every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his defense . . . ."

right . . . to have the Assistance of Counsel for his defence." However, this right to counsel attaches only at or after the initiation of adversary judicial proceedings against the accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment. *United States v Gouveia,* 467 US 180, 187-188; 104 S Ct 2292; 81 L Ed 2d 146 (1984); *Kirby, supra,* 406 US 688-689. The accused is entitled to counsel not only at trial, but at all "critical stages" of the prosecution, *i.e.,* those stages "where counsel's absence might derogate from the accused's right to a fair trial." *United States v Wade,* 388 US 218, 226-227; 87 S Ct 1926; 18 L Ed 2d 1149 (1967). Regardless of whether the accused is in custody or subjected to formal interrogation, the Sixth Amendment right to counsel exists whenever the police attempt to elicit incriminating statements. *Henry, supra,* 447 US 271-273. See also *Brewer v Williams,* 430 US 387; 97 S Ct 1232; 51 L Ed 2d 424 (1977); *Massiah v United States,* 377 US 201; 84 S Ct 1199; 12 L Ed 2d 246 (1964). This right to counsel does not depend upon a request by the accused and courts indulge in every reasonable presumption against waiver. *Brewer, supra,* pp 404-405. Since defendants were interrogated subsequent to arraignment, they were also entitled to counsel under the Sixth Amendment.

## B

The foregoing analysis demonstrates that defendants' request to the arraigning magistrate for appointment of counsel implicated only their Sixth Amendment right to counsel. Although defendants were in custody at the time of their arraignments,

they were not subjected to interrogation. In addition, they did not specifically request counsel for any subsequent custodial interrogations which might be conducted. Defendants requested appointed counsel because they were financially incapable of retaining an attorney and were unwilling to represent themselves. See *State v Sparklin,* 296 Or 85; 672 P2d 1182, 1185-1186 (1983).

C

The trial courts found that defendants never invoked their Fifth Amendment right to counsel before or during their post-arraignment interrogations. Furthermore, defendants knowingly and voluntarily waived their *Miranda* rights prior to their statements. Our independent review of the record does not disclose that these findings are clearly erroneous. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974); *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972).

III

The question remains whether defendants' waiver of their Fifth Amendment right to counsel also waived their Sixth Amendment right to counsel. Defendants were given standard *Miranda* warnings prior to their post-arraignment interrogations. However, these warnings were designed to advise an accused only of his Fifth Amendment rights. The Sixth Amendment right to counsel is considerably broader than its Fifth Amendment counterpart since it applies to all critical stages of the prosecution. Neither the United States Supreme Court nor this Court has delineated specific

procedural requirements for waiver of the Sixth
Amendment right to counsel.[15]

---

[15] Although *Edwards* arguably involved a statement obtained after
judicial criminal proceedings had commenced, the Supreme Court
specifically declined to address the Sixth Amendment question be-
cause the state court had not done so. *Edwards, supra,* 451 US 480, fn
7. Similarly, in *Conklin* (the companion case to *Paintman),* a confes-
sion was obtained seven days after the defendant requested counsel
during his arraignment. See *Paintman, supra,* 412 Mich 526. This
Court did not discuss the Sixth Amendment ramifications of this
request since Paintman and Conklin had also invoked their Fifth
Amendment right to counsel prior to arraignment.

Numerous courts have attempted to define what procedural require-
ments are sufficient to ensure that a defendant's waiver of his Sixth
Amendment right to counsel is voluntary, knowing and intelligent.
See cases cited in *People v Green* (LEVIN, J., *dissenting),* 405 Mich
273, 302-304, and fns 5-8; 274 NW2d 448 (1979), and Note, *Proposed
requirements for waiver of the Sixth Amendment right to counsel,*
82 Colum L R 363, 369, fn 42 (1982). Some courts have held that a
valid waiver of *Miranda* rights alone is sufficient, while other courts
require that the defendant be specifically informed of his Sixth
Amendment rights by the police or a neutral magistrate. Some cases
apparently have turned on the particular facts presented, *e.g.,*
whether the defendant or the police initiated the conversation which
resulted in the confession, or whether the police were aware that
defendant had been arraigned, had requested counsel, or had obtained
counsel by the time the interrogation was conducted. *Id.*

Recent law review articles generally advocate that higher standards
be implemented to safeguard the Sixth Amendment right to counsel.
See, *e.g.,* 82 Colum L R, *supra,* p 381 (defense counsel should be
present when defendant waives his right to counsel); Note, *Sixth
Amendment right to counsel: Standards for knowing and intelligent
pretrial waivers,* 60 Boston U L R 738, 762-764 (1980) (in addition to
*Miranda* warnings, defendant must be told that he has been formally
charged, the significance thereof, and how an attorney could assist
him); Grano, *Rhode Island v Innis: A need to reconsider the consti-
tutional premises underlying the law of confessions,* 17 Am Crim L
R 1, 35 (1979) (police cannot elicit information from defendant unless
they seek to notify counsel; if no attorney exists, defendant's waiver
must meet the standards that govern waiver of the right to counsel at
trial pursuant to *Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L
Ed 2d 562 [1975]); *cf. Constitutional law—Right to counsel,* 49 Geo
Washington L R 399, 409-410 (1981) *(Miranda* warnings sufficient
unless defendant indicted before arrest). United States Supreme Court
Justice Thurgood Marshall has also consistently advocated a higher
standard for waiver of the Sixth Amendment right to counsel. See
*Wyrick v Fields* (Marshall, J., *dissenting),* 459 US 42, 54-55; 103 S Ct
394; 74 L Ed 2d 214 (1982), *cert den after remand* 464 US 1020; 104 S
Ct 556; 78 L Ed 2d 728 (1983).

A

Courts which have specifically addressed the problem of requests for counsel at arraignment have reached differing results both before and after *Edwards* was decided. The Second Circuit Court of Appeals has adopted the strictest procedural requirements for waiver of the Sixth Amendment right to counsel. In *United States v Satterfield,* 558 F2d 655, 657 (CA 2, 1976), defendant's post-indictment and post-arraignment statements were suppressed, even though he had executed a written waiver of his *Miranda* rights. The Court reasoned that even if the statements were voluntary for purposes of the Fifth Amendment "they were involuntary with 'regard . . . [to] the higher standard with respect to waiver of the right to counsel that applies when the Sixth Amendment has attached.' "

Specific procedural safeguards were adopted in *United States v Mohabir,* 624 F2d 1140 (CA 2, 1980).[16] The *Mohabir* court explained that a higher standard for waiver of counsel is required after judicial proceedings have commenced because the government has committed itself to prosecute, and any questioning by the government can only be for the purpose of buttressing its prima facie case. Informing a defendant of his *Miranda* rights and the fact that he has been indicted is insufficient, since this information may not allow the accused to " 'appreciate the gravity of his legal position,

---

[16] *Mohabir* involved an indirect request for counsel to the arraigning magistrate. Before interrogation, defendant was advised several times of his *Miranda* rights, the nature of the charges against him, and the fact that he had been indicted. He was also given a copy of the indictment, but was not informed of the significance thereof. During interrogation, defendant was asked if he would need counsel appointed for arraignment. He replied affirmatively, but questioning continued. The arraigning magistrate was informed of defendant's request and contacted an attorney to represent defendant.

and, the urgency of his need for a lawyer's assistance.'" *Id.,* pp 1148-1150. In the exercise of its supervisory power, the *Mohabir* court held that an accused may not validly waive his Sixth Amendment right to counsel unless a federal judicial officer has explained the content and significance of this right.[17] Furthermore, the accused must be shown the indictment and informed of its significance, the right to counsel, and the seriousness of his situation should he decide to answer further police questions without counsel. The court believed that this procedure would minimize disputes as to what warnings were actually given and whether defendant fully comprehended his rights. *Id.,* p 1153.

The Fifth Circuit, on the other hand, has reached conflicting results, primarily because it has not adequately distinguished the Fifth and Sixth Amendment rights to counsel. In *Blasingame v Estelle,* 604 F2d 893, 895-896 (CA 5, 1979), the court stated that the crucial inquiry is whether defendant's assertion of his right to counsel before the arraigning magistrate was made in such a manner that the subsequent police questioning "impinged on the exercise of the suspect's continuing option to cut off the interview." It was noted that some defendants may wish to have an attorney represent them in legal proceedings, yet wish to assist the police by responding to questions without an attorney being present. The court found that Blasingame's request was not an invocation of his Fifth Amendment right to confer

---

[17] The *Mohabir* court refused to allow the prosecutor to give this advice since he is an adversary of the defendant. It postponed consideration of a third alternative, *i.e.,* "outlawing" all statements made by an indicted defendant following an uncounseled waiver. The court noted that such an approach could conflict with the defendant's constitutional right to represent himself under *Faretta v California, supra. Mohabir, supra,* 624 F2d 1151-1153.

with or have counsel present during questioning. Since he was informed of his *Miranda* rights at arraignment and before his subsequent interrogation, and had voluntarily and intelligently waived these rights, his post-arraignment statements were admissible.[18] *Blasingame,* however, was decided solely on Fifth Amendment grounds.

A contrary result was reached in *Silva v Estelle,* 672 F2d 457 (CA 5, 1982). There, defendant was questioned one hour after he asked the arraigning magistrate for permission to call his attorney. This request was construed as an unequivocal exercise of defendant's right to counsel. The *Silva* court concluded that under *Edwards,* the police were not entitled to initiate further interrogation unless they first honored defendant's request for counsel. Like *Blasingame, Silva* did not distinguish between defendant's Fifth and Sixth Amendment rights to counsel.

Shortly after *Silva* was decided, *Jordan v Watkins,* 681 F2d 1067, 1073-1075 (CA 5, 1982), held that the police, who were not aware that counsel had been appointed at arraignment, properly interrogated the defendant. *Edwards* was distinguished on the grounds that Jordan had never requested counsel with respect to custodial interrogation or attempted to cut off questioning; he merely wanted counsel to assist him in further judicial proceedings. (The *Jordan* court relied heavily upon *Blasingame* in reaching this conclusion, but did not mention *Silva.*) After examining the totality of the circumstances, the court found that Jordan had voluntarily, knowingly, and intelligently waived both his Fifth and Sixth Amendment rights to counsel.

---

[18] The Court of Appeals relied primarily on *Blasingame* in concluding that Bladel and Jackson's post-arraignment statements were admissible.

In contrast, the Sixth Circuit held, in *United States v Campbell,* 721 F2d 578, 579 (CA 6, 1983), that incriminating statements obtained thirteen minutes after defendant requested and was appointed counsel were inadmissible. The court noted that the interrogating agents had manifested an indifference to, if not an intentional disregard for, defendant's Sixth Amendment right to counsel and Fifth Amendment right against compulsory self-incrimination, primarily because they were present when defendant requested counsel. The agents improperly conducted "one last round of interrogation" before defendant had an opportunity to consult with counsel. Such conduct clearly violated *Edwards. Jordan* was distinguished because Campbell had not voluntarily, knowingly, and intelligently waived his Fifth Amendment right to counsel by initiating the post-arraignment conversation.

Several state supreme courts have addressed this problem, but have also reached conflicting results. In *Johnson v Commonwealth,* 220 Va 146, 158-159; 255 SE2d 525 (1979), *later app* 221 Va 736; 273 SE2d 784 (1981), *cert den* 454 US 920; 102 S Ct 422; 70 L Ed 2d 231 (1981), the police initiated interrogation five hours after defendant requested counsel at arraignment. The Virginia Supreme Court held that defendant's confession was admissible because he had knowingly, intelligently, and voluntarily waived his right to counsel prior to interrogation. The court found that the police officers' conduct was not coercive, they were not aware that defendant had been arraigned, and defendant had never requested counsel during the interrogation. However, the *Johnson* court did not distinguish between defendant's Fifth and Sixth Amendment rights to counsel. Furthermore, the case was decided prior to *Edwards.*

The United States Supreme Court ultimately denied defendant's petition for certiorari, over a lengthy dissent written by Justice Marshall. He believed that the decision to admit the confession was contrary to the spirit, if not the letter, of *Edwards.* He rejected the state's attempt to distinguish *Edwards:*

"The State attempts to distinguish *Edwards* on two grounds. First, it points out that Edwards clearly expressed his desire to deal with police only through counsel, whereas petitioner here simply asked that an attorney be appointed. However, an accused is under no obligation to state precisely why he wants a lawyer. If we were to distinguish cases based on the wording of an accused's request, the value of the right to counsel would be substantially diminished. As we stated in *Fare v Michael C.,* 442 US 707, 719 [99 S Ct 2560; 61 L Ed 2d 197] (1979), 'an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease.'

"Second, the State notes that Edwards informed the police of his desire for an attorney, whereas petitioner only informed the judge at his arraignment. The State suggests that since the police did not know about petitioner's request, the interrogation was not improper. However, the police could easily have determined whether petitioner had already exercised his right to counsel; presumably, a prosecutor was present at the arraignment. They did not know about petitioner's request for a lawyer only because they made no effort to determine whether such a request had been made. But even if the police could not have discovered that petitioner had expressed a desire for an attorney, I would hold that the confession should not have been admitted. The key question in this case is whether petitioner's waiver of his right to counsel was knowing, intelligent, and voluntary. In determining whether these conditions were satisfied, the fact that the police were unaware of a prior request for counsel is only tangentially relevant. What is important, rather, is the state of mind of the accused. I think it is no more safe

to assume that a waiver is valid when an accused has made a prior request to the judge at his arraignment than when he has made the request to police. In both cases, the accused informs an individual in authority that he would like an attorney—and yet shortly thereafter, state officials, apparently disregarding his request, ask him to waive his rights." 454 US 922-923.

In *State v Sparklin,* 296 Or 85; 672 P2d 1182 (1983), the Oregon Supreme Court carefully differentiated between the two constitutional rights to counsel. There, defendant requested an attorney at his arraignment on a forgery charge stemming from the use of a stolen credit card. That evening, the police interrogated him concerning an assault on the credit card owner and a factually unrelated murder and robbery. Defendant waived his *Miranda* rights and confessed to the murder.

The *Sparklin* court initially found that defendant had not invoked either his state or Fifth Amendment right to counsel or privilege against compulsory self-incrimination during arraignment. Unlike an interrogation session, a defendant is not confronted with an atmosphere of coercion or attempts to gain admissions during arraignment. Without a more explicit request or one made in anticipation of, or during, interrogation, defendant's request for an attorney was deemed to be merely "a matter of routine." 672 P2d 1185-1186.

Turning to the Sixth Amendment right to counsel and its state counterpart, the *Sparklin* court noted that pursuant to its earlier interpretations of the Oregon Constitution, the state was required to notify the defendant's attorney prior to interrogation and afford him an opportunity to be present. Furthermore, the defendant could not waive his state constitutional right to counsel until he had consulted with his attorney, although he could volunteer statements on his own initiative. 672 P2d

1187. Although the comparable Sixth Amendment right to counsel was not so clearly defined, the court believed that it was of equal scope. 672 P2d 1188. In dicta, the court noted that if defendant had been questioned for the crimes against the credit card owner, the interrogation would have been improper since no waiver could have been given before counsel was consulted. 672 P2d 1190.[19]

The most recent decision is *State v Wyer,* 320 SE2d 92 (W Va, 1984). After reviewing numerous cases, the West Virginia Supreme Court concluded that there is no rule per se against waiver of the Sixth Amendment right to counsel. However, it believed that such a waiver should be judged by stricter standards than a waiver of the Fifth Amendment right to counsel. The *Wyer* court refused to equate a general request for counsel at arraignment with an *Edwards* direct request for counsel to an interrogating officer, since the Sixth Amendment right attaches regardless of whether a specific request is made. Thus, the police could initiate questioning after a defendant requests counsel at arraignment, as long as the defendant is willing to waive his Sixth Amendment right.

In order to ensure a valid waiver of the Sixth Amendment right to counsel, the *Wyer* court held that a defendant must execute a written waiver after being informed of his arrest, the nature of the charges against him, and his *Miranda* rights. If the defendant asserts his *Edwards* right to counsel when the waiver is sought, interrogation must cease until counsel is made available, unless the defendant initiates further communications with the intent to waive his Sixth Amendment

[19] However, since the interrogation related to a criminal episode unrelated to the one on which defendant was arraigned and for which counsel was obtained, the *Sparklin* court concluded that the confession was properly obtained. 672 P2d 1188.

right to counsel. The interrogating officer's knowledge that counsel has been requested was deemed to be only "one ingredient" in determining whether the waiver was valid, rather than an absolute bar. *Id.,* p 105 and fns 23 & 25.

The *Wyer* dissent persuasively argued that if a *Miranda* waiver is inadequate to protect the Fifth Amendment right to counsel under *Edwards,* it certainly would be inadequate to protect the greater Sixth Amendment right. The dissent believed that once a defendant makes an oral or written request for counsel to the magistrate, the police must notify his lawyer and refrain from further interrogation until the defendant has spoken to him. If, after consultation, the defendant wishes to forego his right to counsel, he can then do so. The officer's presence at arraignment was deemed an irrelevant consideration, since both he and the prosecutor have a duty to discover whether the defendant has been arraigned and if he requested counsel. Such safeguards would not prevent confessions, but only guarantee that they were voluntary and obtained without violating the defendant's right to counsel. The dissent concluded:

"[I]t is time to recognize that all defendants without counsel are constitutionally disadvantaged when faced with a government armory of armed police, prosecutors and professional interrogators." *Id.,* p 111.

## B

As the foregoing discussion demonstrates, no consistent approach to the waiver problem has emerged. However, it is clear that no court has adopted a per se rule which prevents a defendant

from ever waiving his Sixth Amendment right to counsel.[20] We also decline to adopt such a rule.

It is also clear that if defendants had invoked their Fifth Amendment right to counsel to the police, *Edwards* and *Paintman* would have barred all further interrogation until defendants had an opportunity to consult with counsel, since they did not reinitiate further conversations with the police. The United States Supreme Court adopted this prophylactic rule to protect an accused from being badgered by the police while in custody. *Oregon v Bradshaw*, 462 US 1039, 1044; 103 S Ct 2830; 77 L Ed 2d 405 (1983).

Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation of a defendant who makes an identical request to a judge. The simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversar-

---

[20] Although the United States Supreme Court sidestepped this issue in *Brewer, supra,* 430 US 405-406, it suggested that a Sixth Amendment waiver is not precluded in *Estelle v Smith,* 451 US 454, 471, fn 16; 101 S Ct 1866; 68 L Ed 2d 359 (1981). Moreover, the Supreme Court has stated that the Sixth Amendment right to counsel may be waived at a post-indictment lineup. *Wade, supra,* 388 US 237. In addition, a defendant has a constitutional right to waive the assistance of counsel at trial, as long as the trial court advises the defendant of the dangers and disadvantages of self-representation and the defendant knowingly and voluntarily waives his right to counsel. *Faretta, supra,* 422 US 835; *People v Anderson,* 398 Mich 361, 368; 247 NW2d 857 (1976).

ies singlehandedly. As Justice Marshall noted, if we are to distinguish cases solely on the wording of an accused's request and to whom it is made, the value of the right to counsel would be substantially diminished.

Furthermore, once adversary judicial proceedings have commenced, the police have "everything to gain" and the accused "everything to lose" when "one last round" of interrogation is conducted before counsel arrives:

"As Justice Stewart noted in *Kirby v Illinois, supra,* 406 US at 689-690:

" 'The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.' . . .

"The indictment thus marks a crucial point for the defendant; it also marks the point after which any questioning of the defendant by the government can only be 'for the purpose of buttressing . . . a prima facie case. . . . [S]ince the finding of the indictment presumably imports that the People have legally sufficient evidence of the defendant's guilt of the crime charged . . . , the necessities of appropriate police investigation "to solve a crime, or even to absolve a suspect" cannot be urged as justification for any subsequent questioning of the defendant.'

\* \* \*

"[A]s Judge Knapp pointed out in *United States v Satterfield,* 417 F Supp 293, 296 (SD NY), aff'd, 558 F2d 655 (CA 2, 1976):

" 'Prior to indictment—before the prosecution has taken shape—there may be reasons why a suspect might rationally wish to deal with agents without the intervention of counsel. By getting in their good graces and being useful to the government he might be able altogether to avoid indictment or any legal entanglement. No such opportunity is open to him after a grand jury has spoken. At that point he cannot make any arrangement with agents or prosecutor that is not subject to ultimate approval by the court, and counsel is obviously important to advise him on what terms such approval is likely to be forthcoming and how best to obtain it.' " *Mohabir, supra,* 624 F2d 1148-1149.[21]

Finally, it is clear that every court has acknowledged that the Sixth Amendment right to counsel is as important, if not more so, than the judicially created Fifth Amendment right to counsel. As such, it is entitled to be protected by procedural safeguards at least as stringent as those designed for its lesser counterpart. We decline to follow the reasoning of those cases which have found valid Sixth Amendment waivers after a request for counsel has been made to a magistrate based solely on waivers of *Miranda* rights. The majority of these cases did not sufficiently distinguish between the concerns underlying the Fifth and Sixth Amendment rights to counsel. As the *Wyer* dissent noted, if a *Miranda* waiver is insufficient to ensure a valid waiver of the Fifth Amendment right to counsel pursuant to *Edwards,* it certainly should be inadequate to ensure a valid waiver of the greater Sixth Amendment right.

C

We need not decide at this time whether stricter procedural standards for waiver of the Sixth

[21] See also 82 Colum L R, *supra,* pp 372-373.

Amendment right to counsel are required. We need only hold that, *at a minimum,* the *Edwards/ Paintman* rule applies by analogy to those situations where an accused requests counsel before the arraigning magistrate.[22] Once this request occurs, the police may not conduct further interrogations until counsel has been made available to the accused, unless the accused initiates further communications, exchanges, or conversations with the police.[23] If a defendant chooses to reinitiate communications, he must be sufficiently aware of both his Fifth and Sixth Amendment rights to effectuate a voluntary, knowing, and intelligent waiver of each right. See *Bradshaw, supra,* p 1046; *Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938).

We further hold that before commencing interrogation, the police have an obligation to determine whether an accused has been arraigned and requested counsel. This duty is no more onerous than that imposed by *Edwards* and *Paintman.* As Justice WILLIAMS observed in his dissent in *People v Esters,* 417 Mich 34, 64; 331 NW2d 211 (1982):

"[T]he defendant's rights may not be diminished merely because the state fails to respond to defendant's request for counsel, as it should have done. Once he has asked for counsel, the defendant has done all that is within his power to secure this guaranteed right."

[22] We do not decide under what circumstances the police may interrogate a defendant who has not specifically requested appointed counsel at arraignment, or who has already consulted with counsel. We note only that these defendants must waive both their Fifth and Sixth Amendment rights to counsel before post-arraignment interrogation may proceed.

[23] This rule is consistent with the result reached in *People v Green,* 405 Mich 273; 274 NW2d 448 (1979), since defendant there reinitiated further communications with the police. However, we do not suggest that the warnings given in *Green* are sufficient to effectuate a valid waiver of the Sixth Amendment right to counsel. That issue was not presented in *Green* and we need not decide it here.

We also note that the police officers who were in charge of the investigations in both *Bladel* and *Jackson* were present at the arraignments when defendants requested appointed counsel. Although the officers who later interrogated Bladel were not present at arraignment, Bladel informed them of his request prior to questioning. In both cases, the police were attempting to strengthen their cases by conducting "one last round" of interrogation before counsel arrived. Interrogations of defendants who are represented by counsel without counsel's knowledge have been repeatedly criticized. See, *e.g., United States v Campbell,* 721 F2d 578, 579 (CA 6, 1983); *United States v Cobbs,* 481 F2d 196, 200 (CA 3, 1973), *cert den* 414 US 980; 94 S Ct 298; 38 L Ed 2d 224 (1973); *United States v Springer,* 460 F2d 1344, 1353 (CA 7, 1972), *cert den* 409 US 873; 93 S Ct 205; 34 L Ed 2d 125 (1972); *Paintman, supra,* 412 Mich 529-530.

The police cannot simply ignore a defendant's unequivocal request for counsel. As this Court noted in *Paintman, supra:*

"Of what significance is invocation of a cherished constitutional right if it is ignored by the hearer and, in fact, only seems to exacerbate the defendant's plight? As the time gap increases between the embracing of the right and its fulfillment, the certainty of its existence must surely dim."

In fact, defendant Bladel specifically testified that he began to doubt whether he would have counsel appointed because he did not meet with an attorney until three days after his arraignment. Furthermore, when he asked the jail personnel and the interrogating officers whether counsel had been appointed for him, they repeatedly pleaded ignorance.

Since defendants Bladel and Jackson requested

counsel during their arraignments, but were not afforded an opportunity to consult with counsel before the police initiated further interrogations, their post-arraignment confessions were improperly obtained and must be suppressed. Plaintiffs nevertheless maintain that defendants' statements need not be suppressed because they were tried before *Edwards* was decided. In *Solem v Stumes,* 465 US 638, 650; 104 S Ct 1338; 79 L Ed 2d 579 (1984), the Supreme Court refused to apply *Edwards* retroactively to collateral reviews of final convictions. The Court, however, specifically declined to decide whether *Edwards* could be applied retroactively to defendants whose convictions were not yet final when the decision was issued.

We need not decide this question since a violation of the Fifth Amendment right to counsel is not involved in either of these cases. We have merely extended the *Edwards/Paintman* rule *by analogy* to cases involving requests for counsel during arraignment, on the basis of our interpretation of both the Sixth Amendment right to counsel and its state constitutional counterpart embodied in Const 1963, art 1, § 20. Given the Supreme Court's holding that *Edwards* established a new "bright line" test,[24] the fact that this Court has not previously articulated precise procedural standards for waivers of the Sixth Amendment right to counsel, and the diverse approaches adopted in other jurisdictions, the rules articulated herein will apply to the instant cases, those cases tried after this opinion is issued, and those cases pending on appeal which have raised the issue.

## IV

Defendant Jackson further argues that his six

---

[24] *Solem, supra,* p 646; *cf. Paintman, supra,* 412 Mich 530-531.

.

prearraignment confessions were inadmissible because the police deliberately delayed arraignment in order to obtain them or the confessions were induced by police threats and promises. The trial court rejected both arguments. The Court of Appeals agreed that the prearraignment delay was not used to extract a confession. Defendant was properly advised of his *Miranda* rights before each session and, according to the police officers, he volunteered his statements. 114 Mich App 654-655.[25]

A

Although the police had sufficient probable cause to obtain a warrant for defendant Jackson's arrest as a result of codefendant Knight's statements, they did not do so. Defendant was "arrested" on the murder charges on Tuesday, July 31, at 2 p.m. when he was turned over to the Livonia police. Since defendant was arrested for a felony without a warrant, the arresting officers were required to bring him before a magistrate for arraignment without unnecessary delay. MCL 764.13; MSA 28.871(1), MCL 764.26; MSA 28.885; *People v Mallory,* 421 Mich 229, 238-239; 365 NW2d 673 (1984); *People v White,* 392 Mich 404, 424; 221 NW2d 357 (1974), *cert den sub nom Michigan v White,* 420 US 912; 95 S Ct 835; 42 L Ed 2d 843 (1975). Immediate arraignment is not required, however. Circumstances may require a brief delay

---

[25] On appeal to this Court, defendant does not challenge the trial court's findings that he was properly advised of his rights before each statement was given and that he never requested an attorney until arraignment. Our independent review of the record does not disclose that these findings are clearly erroneous.

Since the trial court found the police officers to be more credible, the following discussion of the facts is based upon the officers' testimony at the *Walker* hearing.

for "booking," a quick verification of the accused's
volunteered "story," or a brief questioning to de-
termine the immediate question of release or com-
plaint. *Mallory v United States*, 354 US 449, 454-
455; 77 S Ct 1356; 1 L Ed 2d 1479 (1957); *People v
Hamilton*, 359 Mich 410, 416-417; 102 NW2d 738
(1960). Even where an unnecessary delay has oc-
curred, admissions or confessions obtained during
this period will not be excluded unless the delay
was employed as a tool to extract the statement.
*Mallory, supra,* 421 Mich 240; *White, supra.*

Defendant was not arraigned until August 1 at
4:30 p.m., approximately 26-1/2 hours after his
arrest. He was first interrogated shortly after ar-
riving at the Livonia police station. The police
initially obtained background information from
defendant and informed him of his rights, the
nature of the charges against him, and the manda-
tory punishment of life imprisonment for first-de-
gree murder. They then confronted him with
Knight's statement that defendant and another
person had committed the murder. At approxi-
mately 3:30 p.m., defendant admitted that he was
present during the murder, but maintained that
Knight was with him and had shot the victim.

We conclude that this first oral statement was
not obtained during a period of unreasonable de-
lay. The officers' questioning occurred 1-1/2 hours
after the arrest and was for the purpose of deter-
mining whether Knight had unjustly accused de-
fendant.

Sergeant Richard Ericson, another officer in
charge of the case, testified at the *Walker* hearing
that after this first confession, the police had
sufficient information to obtain an arrest warrant
against defendant. Sergeant Hoff testified simi-
larly, but explained that they could not have
obtained a warrant because the prosecutor's office

was closed and there was no one available to authorize the warrant request. Shortly after the first statement was given, the police asked defendant to repeat his statement so that it could be tape-recorded. Defendant agreed. The recording began at 5:52 p.m. However, the quality of the recording was so poor that the police asked defendant to repeat the statement again. The second taping began at 8:48 p.m. The content of these two recorded statements did not substantially differ from that of the prior oral statement.

Giving the police the benefit of the doubt, we conclude that no unreasonable delay occurred between the arrest and the time these two taped statements were given. If any unreasonable delay occurred, it was not used to extract a new statement, but merely to memorialize the first oral statement.[26]

After the second taped statement, defendant was confronted by the fact that his version still differed from Knight's, *i.e.,* defendant claimed that he and Knight were present but that Knight was the shooter, while Knight claimed that defendant and White committed the murder. The police noted that Knight had agreed to undergo a polygraph examination the following morning and requested that defendant undergo one also. Defendant agreed.

The examination began at approximately 10 a.m. The polygraph examiner informed defendant

[26] However, our conclusion in no way condones the officers' actions. Defendant's first confession, when coupled with Knight's statement, presented more than enough evidence to arraign defendant for conspiracy and first-degree murder. The only purpose in recording defendant's statement was to strengthen the prosecution's case against him and his codefendants prior to arraignment. The result in this case might have been different if the first oral statement had been obtained earlier in the day, if it had materially differed from the subsequently recorded statements, or if the recorded statements were the product of more intensive interrogation.

of his rights and that he did not have to submit to the exam. Defendant still agreed to the polygraph. Afterwards, the examiner informed defendant that he had not been truthful and urged him to tell the other officers the truth in order to maintain his credibility. Defendant then confessed to the examiner that he had shot the victim and that White, not Knight, had been present. The examiner immediately informed Sergeant Hoff, who was waiting outside the polygraph room. Shortly thereafter, Sergeant Hoff met with defendant, advised him of his rights, and obtained substantially similar oral and written statements.

Primarily on the basis of the officers' testimony at the *Walker* hearing, we conclude that the three post-polygraph statements were obtained during an unnecessary prearraignment delay and that the delay was employed as a tool to extract these statements. Sergeant Hoff testified that if an arrest warrant had been issued during the morning of August 1, defendant could have been arraigned at that time, except for the polygraph exam. Sergeant Ericson testified that he began preparing the 36-page warrant request for all four defendants at 9:30 a.m. on August 1, and finished at 1 p.m. On cross-examination, however, he stated that he had previously prepared a request and obtained a warrant for codefendant Perry. The warrant requests for Perry and defendant were substantially similar, except for the information concerning Knight's statements, and defendant's pre- and post-polygraph confessions. Sergeant Ericson thereafter presented the request to the prosecutor's office, obtained the complaints and warrants, and arrived at the Livonia District Court at approximately 4:30 p.m. for the arraignment.

Although the thoroughness with which the warrant request was prepared may be commendable,

the police cannot justify infringing upon a defendant's statutory and constitutional rights to a prompt arraignment merely on the grounds that their "paperwork" has not yet been completed. A contrary conclusion would encourage dilatory efforts in seeking and obtaining the prosecutor's authorization. It must be remembered that a magistrate is required to issue an arrest warrant upon presentation of a proper complaint alleging the commission of an offense and upon a finding of reasonable cause to believe that the accused committed the offense. MCL 764.1a; MSA 28.860(1). The complaint need not contain every fact which contributed to the affiant's conclusions, nor must every factual allegation be independently documented. The complaint simply has to be sufficient enough to enable the magistrate to determine that the charges are not capricious and are sufficiently supported to justify further criminal action. *Jaben v United States,* 381 US 214, 224-225; 85 S Ct 1365; 14 L Ed 2d 345 (1965); *United States v Fachini,* 466 F2d 53, 56 (CA 6, 1972). In addition, a complaint may thereafter be amended if additional evidence so requires. The police and the prosecutor here had sufficient evidence to draft a complaint and obtain a warrant before or shortly after defendant was arrested. There was no need, for purposes of arraignment, to determine whether Knight or defendant was telling the truth.

The delay was used as a tool to extract the three post-polygraph statements. Sergeants Ericson, Hoff, and Garrison all testified that they asked defendant to submit to a polygraph so that they could determine whether he was telling the truth. Although they did not specifically instruct the examiner to obtain a statement, Sergeant Hoff testified that they had hoped to obtain another statement if defendant's original confession proved

inaccurate. The police were obviously attempting to strengthen their case against all four defendants, particularly White, who had not yet confessed to any involvement. The three post-polygraph confessions therefore were not admissible.[27]

### B

After reviewing the record, we conclude that the trial court did not clearly err in finding that defendant's three pre-polygraph confessions were not improperly induced by threats or promises.[28] In light of our prior conclusion that the post-polygraph confessions are inadmissible, we need not determine whether they were the product of

[27] Plaintiff suggests that even if an unnecessary prearraignment delay occurred, the ultimate test for purposes of the exclusionary rule is whether the statement obtained was voluntary or coerced. See, *e.g., People v Wallach,* 110 Mich App 37, 59, fn 5; 312 NW2d 387 (1981), *vacated and remanded on other grounds* 417 Mich 937; 331 NW2d 730 (1983); *People v Antonio Johnson,* 85 Mich App 247, 252-253; 271 NW2d 177 (1978). Although earlier decisions of this Court could be interpreted in this manner, see, *e.g., People v Farmer,* 380 Mich 198; 156 NW2d 504 (1968); *People v Ubbes,* 374 Mich 571; 132 NW2d 669 (1965); *People v Harper,* 365 Mich 494; 113 NW2d 808 (1962); *Hamilton, supra,* an examination of *White, supra,* 392 Mich 424-425, reveals that this Court now treats the question of prearraignment delay apart from the issue of voluntariness. If voluntariness were the only relevant inquiry, there would be no reason to analyze whether a prearraignment delay occurred and was used as a tool, since involuntary statements have always been held inadmissible regardless of when they are obtained. Prompt arraignment serves several important functions apart from preventing improper custodial interrogations. See *Mallory, supra,* 421 Mich 239.

[28] A review of the police officers' testimony reveals that if any threats or promises were made to defendant, they occurred after the second taped statement. Sergeant Ericson testified that he told defendant after the second taped statement that the police were primarily after Ms. Perry. Leniency was not mentioned until after the post-arraignment statement. Sergeant Garrison stated that defendant may have mentioned not wanting to go to jail on July 31, but he was informed that the police could not authorize pleas to less serious offenses. Sergeant Hoff testified that no one discussed pleas on July 31. He did mention the possibility of a plea to second-degree murder if defendant cooperated and if the prosecutor agreed. However, this discussion occurred after the polygraph examination.

threats or promises. Although defendant's three pre-polygraph confessions implicated him in the murder at least as an aider and abettor, a new trial is required. Defendant testified before the jury that he did not make the first oral statement and that the two taped confessions were induced by police threats and promises. The cumulative effect of admitting seven confessions, as opposed to three, may have made a difference in the jury's determination of credibility.

## V

The decision of the Court of Appeals is affirmed in *Bladel* and reversed in *Jackson.* These cases are remanded to the trial courts for further proceedings consistent with this opinion.

WILLIAMS, C.J., and KAVANAGH and LEVIN, JJ., concurred with CAVANAGH, J.

RYAN, J. *(concurring in part and dissenting in part).* I concur in part III-C of my brother CAVANAGH's opinion with the exception, however, that since the *Edwards/Paintman* ruling derives from an analysis of the United States Constitution, I find it unnecessary and, indeed, inappropriate to base the result in these cases upon Const 1963, art 1, § 20.

I do not agree, however, that the record in this case supports my brother's conclusion that the "post-polygraph" statements given by defendant Jackson are inadmissible for the reason stated. In my judgment, it is mere appellate speculation to conclude that the failure to arraign defendant Jackson during the morning of August 1 was "unnecessary prearraignment delay and that the delay was employed as a tool to extract these statements." That conclusion carries with it the

implicit charge that the Livonia police contrived to lawlessly delay the defendant's arraignment on the mere pretext of completing unnecessary "paperwork," but for the actual purpose of extracting more confessions from him knowing that procedure to be improper. In my judgment, that conclusion is unsupported in the record.

This Court's opinion at this appellate remove, four and one-half years after the event, that the Livonia police may have had enough evidence at 9:30 a.m. on the morning of August 1 to obtain a recommendation for a warrant from an assistant Wayne County prosecuting attorney, and in turn to obtain an arrest warrant from a district judge, without benefit of further interrogation of Jackson, might be correct. If so, the conclusion that it was unnecessary to delay defendant Jackson's arraignment until the afternoon might likewise be correct. It does not follow therefrom, however, that the decision of the Livonia police to proceed with the preparation of a 36-page warrant request, to conduct a polygraph examination to which defendant Jackson had agreed the night before, and to question Jackson following the failed polygraph examination, decisively demonstrate that the officers unnecessarily delayed arraigning Jackson as a ruse to "extract the post-polygraph statements." It is equally plausible, on the record before us, that the officers honestly believed that they were insufficiently prepared to request and obtain a warrant in this major "murder for hire" case until the statutorily required warrant request was properly completed and approved, the previously scheduled polygraph examination was completed, and the defendant was afforded the opportunity to reconcile, if he wished to, the conflicts it revealed. See *United States v Lovasco,* 431 US 783, 791; 97 S Ct 2044; 52 L Ed 2d 752 (1977) ("[P]rose-

cutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt").

BRICKLEY, J., concurred with RYAN, J.

BOYLE, J. *(dissenting).* In *People v Jackson,* I concur with the part of Justice RYAN's opinion regarding the post-polygraph statements. I would also find that appellant Jackson's post-arraignment statement, which it is undisputed was a repetition of the oral and written statement given on August 1 in which the defendant confessed that he was the shooter, was, in light of the overwhelming evidence, if error, harmless beyond a reasonable doubt. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). I would find in *People v Bladel* that the Sixth Amendment right to counsel, which the people concede had attached, was waived. *Brewer v Williams,* 430 US 387; 97 S Ct 1232; 51 L Ed 2d 424 (1977), itself permits waiver. In concluding that waiver did not occur, Justice Stewart for the majority noted, "The Court of Appeals did not hold, nor do we, that under the circumstances of this case, Williams could not, without notice to counsel have waived his rights under the Sixth and Fourteenth Amendments." *Id.,* pp 405-406. Justice Stewart further emphasized that the detective "did not preface this effort [to elicit a response] by telling Williams that he had a right to the presence of a lawyer, and made no effort at all to ascertain whether Williams wished to relinquish that right." 430 US 405. In *Bladel* it is clear that when the defendant mentioned he had asked for an appointed attorney he was asked if he wanted an attorney present and the defendant stated that he did not need one. I

would find an intentional relinquishment of a known right.

While I recognize both the importance of the Sixth Amendment right to counsel and the appeal of the symmetrical application of *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), and *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), I am unconvinced without further guidance from the United States Supreme Court that we are constitutionally obligated to reach this result.