Justice Thomas,
dissenting.
The Court holds today — for the first time after plenary consideration of the question — that a criminal prosecution begins, and that the Sixth Amendment right to counsel therefore attaches, when an individual who has been placed under arrest makes an initial appearance before a magistrate for a probable-cause determination and the setting of bail. Because the Court’s holding is not supported by the original meaning of the Sixth Amendment or any reasonable interpretation of our precedents, I respectfully dissent.
I
The Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have *219 the Assistance of Counsel for his defence.” The text of the Sixth Amendment thus makes clear that the right to counsel arises only upon initiation of a “criminal prosecutio[n].” For that reason, the Court has repeatedly stressed that the Sixth Amendment right to counsel “does not attach until a prosecution is commenced.” McNeil v. Wisconsin, 501 U. S. 171, 175 (1991); see also United States v. Gouveia, 467 U. S. 180, 188 (1984) (“[T]he literal language of the Amendment . . . requires the existence of both a ‘criminal prosecutio[n]’ and an ‘accused’ ”). Echoing this refrain, the Court today reiterates that “[t]he Sixth Amendment right of the ‘accused’ to assistance of counsel in ‘all criminal prosecutions’ is limited by its terms.” Ante, at 198 (footnote omitted).
Given the Court’s repeated insistence that the right to counsel is textually limited to “criminal prosecutions,” one would expect the Court’s jurisprudence in this area to be grounded in an understanding of what those words meant when the Sixth Amendment was adopted. Inexplicably, however, neither today’s decision nor any of the other numerous decisions in which the Court has construed the right to counsel has attempted to discern the original meaning of “criminal prosecutio[n].” I think it appropriate to examine what a “criminal proseeutio[n]” would have been understood to entail by those who adopted the Sixth Amendment.
A
There is no better place to begin than with Blackstone, “whose works constituted the preeminent authority on English law for the founding generation.” Alden v. Maine, 527 U. S. 706, 715 (1999). Blackstone devoted more than 100 pages of his Commentaries on the Laws of England to a discussion of the “regular and ordinary method of proceeding in the courts of criminal jurisdiction.” 4 W. Blackstone, Commentaries *289 (hereinafter Blackstone).
At the outset of his discussion, Blackstone organized the various stages of a criminal proceeding “under twelve gen *220 eral heads, following each other in a progressive order.” Ibid. The first six relate to pretrial events: “1. Arrest; 2. Commitment and bail; 3. Prosecution; 4. Process; 5. Arraignment, and it’s incidents; 6. Plea, and issue.” Ibid. (emphasis added). Thus, the first significant fact is that Blackstone did not describe the entire criminal process as a “prosecution,” but rather listed prosecution as the third step in a list of successive stages. For a more complete understanding of what Blackstone meant by “prosecution,” however, we must turn to chapter 23, entitled “Of the Several Modes of Prosecution.” Id., at *301. There, Blackstone explained that — after arrest and examination by a justice of the peace to determine whether a suspect should be discharged, committed to prison, or admitted to bail, id., at *296 — the “next step towards the punishment of offenders is their prosecution, or the manner of their formal accusation,” id., at *301 (emphasis added).
Blackstone thus provides a definition of “prosecution”: the manner of an offender’s “formal accusation.” The modifier “formal” is significant because it distinguishes “prosecution” from earlier stages of the process involving a different kind of accusation: the allegation of criminal conduct necessary to justify arrest and detention. Blackstone’s discussion of arrest, commitment, and bail makes clear that a person could not be arrested and detained without a “charge” or “accusation,” i. e., an allegation, supported by probable cause, that the person had committed a crime. See id., at *289-*3Q0. But the accusation justifying arrest and detention was clearly preliminary to the “formal accusation” that Blackstone identified with “prosecution.” See id., at *290, *318.
By “formal accusation,” Blackstone meant, in most cases, “indictment, the most usual and effectual means of prosecution.” Id., at *302. Blackstone defined an “indictment” as “a written accusation of one or more persons of a crime or misdemeanor, preferred to, and presented upon oath by, a grand jury.” Ibid, (emphasis deleted). If the grand jury *221 was “satisfied of the truth of the accusation,” it endorsed the indictment, id., at *305-*306, which was then “publicly delivered into court,” id., at *306, “afterwards to be tried and determined,” id., at *303, “before an officer having power to punish the [charged] offence,” 2 T. Cunningham, A New and Complete Law Dictionary (2d ed. 1771).
In addition to indictment, Blackstone identified two other “methods of prosecution at the suit of the king.” 4 Blackstone *312. The first was presentment, which, like an indictment, was a grand jury’s formal accusation “of an offence, inquirable in the Court where it [was] presented.” 5 G. Jacob, The Law-Dictionary 278-279 (1811). The principal difference was that the accusation arose from “the notice taken by a grand jury of any offence from their own knowledge or observation” rather than from a “bill of indictment laid before them.” 4 Blackstone *301. The second was information, “the only species of proceeding at the suit of the king, without a previous indictment or presentment by a grand jury.” Id., at *308. After an information was filed, it was “tried,” id., at *309, in the same way as an indictment: “The same notice was given, the same process was issued, the same pleas were allowed, the same trial by jury was had, the same judgment was given by the same judges, as if the prosecution had originally been by indictment,” id., at *310.
From the foregoing, the basic elements of a criminal “prosecution” emerge with reasonable clarity. “Prosecution,” as Blackstone used the term, referred to “instituting a criminal suit,” id., at *309, by filing a formal charging document—an indictment, presentment, or information — upon which the defendant was to be tried in a court with power to punish the alleged offense. And, significantly, Blackstone’s usage appears to have accorded with the ordinary meaning of the term. See 2 N. Webster, An American Dictionary of the English Language (1828) (defining “prosecution” as “[t]he institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an of *222 fender before a legal tribunal, and pursuing them to final judgment,” and noting that “[prosecutions may be by presentment, information or indictment”).
B
With Blackstone as our guide, it is significant that the Framers used the words “criminal prosecutions” in the Sixth Amendment rather than some other formulation such as “criminal proceedings” or “criminal cases.” Indeed, elsewhere in the Bill of Rights we find just such an alternative formulation: In contrast to the Sixth Amendment, the Fifth Amendment refers to “criminal case[s].” U. S. Const., Amdt. 5 (“No person . . . shall be compelled in any criminal case to be a witness against himself”).
In Counselman v. Hitchcock, 142 U. S. 547 (1892), the Court indicated that the difference in phraseology was not accidental. There the Court held that the Fifth Amendment right not to be compelled to be a witness against oneself “in any criminal case” could be invoked by a witness testifying before a grand jury. The Court rejected the argument that there could be no “criminal case” prior to indictment, reasoning that a “criminal case” under the Fifth Amendment is much broader than a “criminal prosecution” under the Sixth Amendment. Id., at 563.
The following Term, the Court construed the phrase “criminal prosecution” in a statutory context, and this time the Court squarely held that a “prosecution” does not encompass preindictment stages of the criminal process. In Virginia v. Paul, 148 U. S. 107 (1893), the Court considered Revised Statute §643, which authorized removal to federal court of any “‘criminal prosecution’” “‘commenced in any court of a State’ ” against a federal officer. Id., at 115. The respondent, a deputy marshal, had been arrested by Virginia authorities on a warrant for murder and was held in county jail awaiting his appearance before a justice of the peace “with a view to a commitment to await the action of the *223 grand jury.” Id., at 118. He filed a petition for removal of “ ‘said cause’ ” to federal court. Ibid. The question before the Court was whether a “ ‘criminal prosecution’ ” had “ ‘commenced’ ” within the meaning of the statute at the time the respondent filed his removal petition.
The Court held that a criminal prosecution had not commenced, and that removal was therefore not authorized by the terms of the statute. The Court noted that under Virginia law murder could be prosecuted only “by indictment found in the county court,” and that “a justice of the peace, upon a previous complaint, [could] do no more than to examine whether there [was] good cause for believing that the accused [was] guilty, and to commit him for trial before the court having jurisdiction of the offence.” Ibid. Accordingly, where “no indictment was found, or other action taken, in the county court,” there was as yet no “ ‘criminal prosecution.’” Id., at 119. The appearance before the justice of the peace did not qualify as a “prosecution”:
“Proceedings before a magistrate to commit a person to jail, or to hold him to bail, in order to secure his appearance to answer for a crime or offence which the magistrate has no jurisdiction himself to try, before the court in which he may be prosecuted and tried, are but preliminary to the prosecution, and are no more a commencement of the prosecution, than is an arrest by an officer without a warrant for a felony committed in his presence.” Ibid.
C
The foregoing historical summary is strong evidence that the term “criminal prosecutio[n]” in the Sixth Amendment refers to the commencement of a criminal suit by filing formal charges in a court with jurisdiction to try and punish the defendant. And on this understanding of the Sixth Amendment, it is clear that petitioner’s initial appearance before the magistrate did not commence a “criminal prosecu *224 tio[n].” No formal charges had been filed. The only document submitted to the magistrate was the arresting officer’s affidavit of probable cause. The officer stated that he “ha[d] good reason to believe” that petitioner was a felon and had been “walking around [an] RV park with a gun belt on, carrying a pistol, handcuffs, mace spray, extra bullets and a knife.” App. to Pet. for Cert. 33a. The officer therefore “charge[d]” that petitioner had “committed] the offense of unlawful possession of a firearm by a felon — 3rd degree felony.” Ibid. The magistrate certified that he had examined the affidavit and “determined that probable cause existed for the arrest of the individual accused therein.” Id., at 34a. Later that day, petitioner was released on bail, and did not hear from the State again until he was indicted six months later.
The affidavit of probable cause clearly was not the type of formal accusation Blackstone identified with the commencement of a criminal “prosecution.” Rather, it was the preliminary accusation necessary to justify arrest and detention— stages of the criminal process that Blackstone placed before prosecution. The affidavit was not a pleading that instituted a criminal prosecution, such as an indictment, presentment, or information; and the magistrate to whom it was presented had no jurisdiction to try and convict petitioner for the felony offense charged therein. See Teal v. State, 230 S. W. 3d 172, 174 (Tex. Crim. App. 2007) (“The Texas Constitution requires that, unless waived by the defendant, the State must obtain a grand jury indictment in a felony case”); Tex. Code Crim. Proc. Ann., Arts. 4.05, 4.11(a) (Vernon 2005). That is most assuredly why the magistrate informed petitioner that charges “will be filed” in district court. App. to Pet. for Cert. 35a (emphasis added).
The original meaning of the Sixth Amendment, then, cuts decisively against the Court’s conclusion that petitioner’s right to counsel attached at his initial appearance before the magistrate. But we are not writing on a blank slate: This *225 Court has a substantial body of.more recent precedent construing the Sixth Amendment right to counsel.
II
As the Court notes, our cases have “pegged commencement” of a criminal prosecution, ante, at 198, to “the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,” Kirby v. Illinois, 406 U. S. 682, 689 (1972) (plurality opinion). The Court has repeated this formulation in virtually every right-to-counsel case decided since Kirby. Because Kirby’s formulation of the attachment test has been accorded such precedential significance, it is important to determine precisely what Kirby said:
“In a line of constitutional cases in this Court stemming back to the Court’s landmark opinion in Powell v. Alabama, 287 U. S. 45 [(1932)], it has been firmly established that a person’s Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. See Powell v. Alabama, supra; Johnson v. Zerbst, 304 U. S. 458 [(1938)]; Hamilton v. Alabama, 368 U. S. 52 [(1961)]; Gideon v. Wainwright, 372 U. S. 335 [(1963)]; White v. Maryland, 373 U. S. 59 [(1963) (per curiam)]; Massiah v. United States, 377 U. S. 201 [(1964)]; United States v. Wade, 388 U. S. 218 [(1967)]; Gilbert v. California, 388 U. S. 263 [(1967)]; Coleman v. Alabama, 399 U. S. 1 [(1970)].
“This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The Powell case makes clear that the right attaches at the time of arraignment, and the Court has recently held that it exists also at the time of a preliminary hearing. Coleman v. Alabama, supra. But the point is that, while members of the Court have differed *226 as to existence of the right to counsel in the contexts of some of the above cases, all of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.” Id., at 688-689 (footnote omitted).
It is noteworthy that Kirby did not purport to announce anything new; rather, it simply catalogued what the Court had previously held. And the point of the plurality’s discussion was that the criminal process contains stages prior to commencement of a criminal prosecution. The holding of the case was that the right to counsel did not apply at a station house lineup that took place “before the defendant had been indicted or otherwise formally charged with any criminal offense.” Id., at 684.
Kirby gave five examples of events that initiate “adversary judicial criminal proceedings”: formal charge, preliminary hearing, indictment, information, and arraignment. None of these supports the result the Court reaches today. I will apply them seriatim. No indictment or information had been filed when petitioner appeared before the magistrate. Nor was there any other formal charge. Although the plurality in Kirby did not define “formal charge,” there is no reason to believe it would have included an affidavit of probable cause in that category. None of the cases on which it relied stood for that proposition. Indeed, all of them—with the exception of White v. Maryland, 373 U. S. 59 (1963) (per curiam), and Coleman v. Alabama, 399 U. S. 1 (1970)—involved postindictment proceedings. See Powell v. Alabama, 287 U. S. 45, 49 (1932) (postindictment arraignment); Johnson v. Zerbst, 304 U. S. 458, 460 (1938) (trial); Hamilton v. Alabama, 368 U. S. 52, 53, n. 3 (1961) (postindictment arraignment); Gideon v. Wainwright, 372 U. S. 335, 337 (1963) (trial); Massiah v. United States, 377 U. S. 201 (1964) (postindictment interrogation); United States v. Wade, 388 U. S. 218, *227 219-220 (1967) (postindictment lineup); Gilbert v. California, 388 U. S. 263, 269 (1967) (same).
Nor was petitioner’s initial appearance a preliminary hearing. The comparable proceeding in Texas is called an “examining trial.” See ante, at 202, n. 12. More importantly, petitioner’s initial appearance was unlike the preliminary hearings that were held to constitute “critical stages” in White and Coleman, because it did not involve entry of a plea, cf. White, supra, at 60, and was nonadversarial, cf. Coleman, supra, at 9. There was no prosecutor present, there were no witnesses to cross-examine, there was no case to discover, and the result of the proceeding was not to bind petitioner over to the grand jury or the trial court.
Finally, petitioner’s initial appearance was not what Kirby described as an “arraignment.” An arraignment, in its traditional and usual sense, is a postindietment proceeding at which the defendant enters a plea. See, e. g., W. LaFave, J. Israel, & N. King, Criminal Procedure § 1.3(n), pp. 19-20 (4th ed. 2004); 4 Blackstone *322. Although the word “arraignment” is sometimes used to describe an initial appearance before a magistrate, see LaFave, supra, § 1.3(j), at 16, that is not what Kirby meant when it said that the right to counsel attaches at an “arraignment.” Rather, it meant the traditional, postindictment arraignment where the defendant enters a plea. This would be the most reasonable assumption even if there were nothing else to go on, since that is the primary meaning of the word, especially when used unmodified.
But there is no need to assume. Kirby purported to describe only what the Court had already held, and none of the cases Kirby cited involved an initial appearance. Only two of the cases involved arraignments, and both were postindictment arraignments at which the defendant entered a plea. Hamilton, supra, at 53, n. 3; Powell, 287 U. S., at 49. And the considerations that drove the Court’s analysis in those cases are not present here. See id., at 57 (emphasizing *228 that “from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel”); Hamilton, supra, at 53-55 (emphasizing that the defendant entered a plea and was required to raise or waive certain defenses). Kirby’s inclusion of “arraignment” in the list of adversary judicial proceedings that trigger the right to counsel thus provides no support for the view that the right to counsel attaches at an initial appearance before a magistrate.
Ill
It is clear that when Kirby was decided in 1972 there was no precedent in this Court for the conclusion that a criminal prosecution begins, and the right to counsel therefore attaches, at an initial appearance before a magistrate. The Court concludes, however, that two subsequent decisions— Brewer v. Williams, 430 U. S. 387 (1977), and Michigan v. Jackson, 475 U. S. 625 (1986)—stand for that proposition. Those decisions, which relied almost exclusively on Kirby, cannot bear the weight the Court puts on them.[1]
In Brewer, the defendant challenged his conviction for murdering a 10-year-old girl on the ground that his Sixth Amendment right to counsel had been violated when detectives elicited incriminating statements from him while transporting him from Davenport, Iowa, where he had been arrested on a warrant for abduction and “arraigned before a judge ... on the outstanding arrest warrant,” to Des Moines, *229 where he was to be tried. 430 U. S., at 390-391. The principal issue was whether the defendant had waived his right to have counsel present during police questioning when he voluntarily engaged one of the detectives in a “wide-ranging conversation.” Id., at 392. He subsequently agreed to lead the detectives to the girl’s body in response to the so-called “‘Christian burial speech,’” in which one of the detectives told the defendant that “ ‘the parents of this little girl should be entitled to a Christian burial for the little girl who was snatched away from them on Christmas [E]ve and murdered.’ ” Id., at 392-393. Not surprisingly, the parties vigorously disputed the waiver issue, and it sharply divided the Court.
In contrast, the question whether the defendant’s right to counsel had attached was neither raised in the courts below nor disputed before this Court. Nonetheless, the Court, after quoting Kirby’s formulation of the test, offered its conelusory observations:
“There can be no doubt in the present case that judicial proceedings had been initiated against Williams before the start of the automobile ride from Davenport to Des Moines. A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in a Davenport courtroom, and he had been committed by the court to confinement in jail. The State does not contend otherwise.” 430 U. S., at 399.
Brewer’s cursory treatment of the attachment issue demonstrates precisely why, when “an issue [is] not addressed by the parties,” it is “imprudent of us to address it... with any pretense of settling it for all time.” Metropolitan Stevedore Co. v. Rambo, 521 U. S. 121, 136 (1997). As an initial matter, the Court’s discussion of the facts reveals little about what happened at the proceeding. There is no indication, for example, whether it was adversarial or whether the defendant *230 was required to enter a plea or raise or waive any defenses— facts that earlier cases such as Hamilton, White, and Coleman had found significant.
Even assuming, however, that the arraignment in Brewer was functionally identical to the initial appearance here, Brewer offered no reasoning for its conclusion that the right to counsel attached at such a proceeding. One is left with the distinct impression that the Court simply saw the word “arraignment” in Kirby’s attachment test and concluded that the right must have attached because the defendant had been “arraigned.” There is no indication that Brewer considered the difference between an arraignment on a warrant and an arraignment at which the defendant pleads to the indictment.
The Court finds it significant that Brewer expressed “ ‘no doubt’” that the right had attached. Ante, at 211 (quoting 430 U. S., at 399). There was no need for a “lengthy disquisitio[n],” the Court says, because Brewer purportedly “found the attachment issue an easy one.” Ante, at 211. What the Court neglects to mention is that Brewer’s attachment holding is indisputably no longer good law. That is because we have subsequently held that the Sixth Amendment right to counsel is “offense specific,” meaning that it attaches only to those offenses for which the defendant has been formally charged, and not to “other offenses ‘closely related factually’ to the charged offense.” Texas v. Cobb, 532 U. S. 162, 164 (2001). Because the defendant in Brewer had been arraigned only on the abduction warrant, there is no doubt that, under Cobb, his right to counsel had not yet attached with respect to the murder charges that were subsequently brought. See 532 U. S., at 184 (Breyer, J., dissenting) (noting that under the majority’s rule, “[the defendant’s] murder conviction should have remained undisturbed”). But the Court in Cobb did not consider itself bound by Brewer’s implicit holding on the attachment question. See 532 U. S., at *231 169 (“Constitutional rights are not defined by inferences from opinions which did not address the question at issue”). And here, as in Cobb, Brewer did not address the fact that the arraignment on the warrant was not the same type of arraignment at which the right to counsel had previously been held to attach, and the parties did not argue the question. Brewer is thus entitled to no more precedential weight here than it was in Cobb.
Nor does Jackson control. In Jackson, as in Brewer, the attachment issue was secondary. The question presented was “not whether respondents had a right to counsel at their postarraignment, custodial interrogations,” 475 U. S., at 629, but “whether respondents validly waived their right to counsel,” id., at 630. And, as in Brewer, the Court’s waiver holding was vigorously disputed. See 475 U. S., at 637-642 (Rehnquist, J., dissenting); see also Cobb, supra, at 174-177 (Kennedy, J., concurring) (questioning Jackson’s vitality). Unlike in Brewer, however, the attachment question was at least contested in Jackson—but barely. With respect to respondent Jackson, the State conceded the issue. Jackson, supra, at 629, n. 3. And with respect to respondent Bladel, the State had conceded the issue below, see People v. Bladel, 421 Mich. 39, 77, 365 N. W. 2d 56, 74 (1984) (Boyle, J., dissenting), and raised it for the first time before this Court, devoting only three pages of its brief to the question, see Brief for Petitioner in Michigan v. Bladel, O. T. 1985, No. 84-1539, pp. 24-26.
The Court disposed of the issue in a footnote. See Jackson, supra, at 629-630, n. 3. As in Brewer, the Court did not describe the nature of the proceeding. It stated only that the respondents were “arraigned.” 475 U. S., at 627-628. The Court phrased the question presented in terms of “arraignment,” id., at 626 (“The question presented by these two cases is whether the same rule applies to a defendant who has been formally charged with a crime and who has *232 requested appointment of counsel at his arraignment”), and repeated the words “arraignment” or “postarraignment” no fewer than 35 times in the course of its opinion.
There is no way to know from the Court’s opinion in Jackson whether the arraignment at issue there was the same type of arraignment at which the right to counsel had been held to attach in Powell and Hamilton. Only upon examination of the parties’ briefs does it become clear that the proceeding was in fact an initial appearance. But Jackson did not even acknowledge, much less “flatly rejec[t] the distinction between initial arraignment and arraignment on the indictment.” Ante, at 202. Instead, it offered one sentence of analysis—“In view of the clear language in our decisions about the significance of arraignment, the State’s argument is untenable”—followed by a string citation to four cases, each of which quoted Kirby. 475 U. S., at 629-630, n. 3. For emphasis, the Court italicized the words “or arraignment” in Kirby’s attachment test. 475 U. S., at 629, n. 3 (internal quotation marks omitted).
The only rule that can be derived from the face of the opinion in Jackson is that if a proceeding is called an “arraignment,” the right to counsel attaches.[2] That rule would *233 not govern this case because petitioner’s initial appearance was not called an “arraignment” (the parties refer to it as a “magistration,” Brief for Petitioner 4; Brief for Respondent 5). And that would, in any case, be a silly rule. The Sixth Amendment consequences of a proceeding should turn on the substance of what happens there, not on what the State chooses to call it. But the Court in Jackson did not focus on the substantive distinction between an initial arraignment and an arraignment on the indictment. Instead, the Court simply cited Kirby and left it at that. In these circumstances, I would recognize Jackson for what it was— a cursory treatment of an issue that was not the primary focus of the Court’s opinion. Surely Jackson’s footnote must yield to our reasoned precedents.
And our reasoned precedents provide no support for the conclusion that the right to counsel attaches at an initial appearance before a magistrate. Kirby explained why the right attaches “after the initiation of adversary judicial criminal proceedings”:
“The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It *234 is this point, therefore, that marks the commencement of the ‘criminal prosecutions’ to which alone the explicit guarantees of the Sixth Amendment are applicable.” 406 U. S., at 689-690 (plurality opinion).
None of these defining characteristics of a “criminal prosecution” applies to petitioner’s initial appearance before the magistrate. The initial appearance was not an “adversary” proceeding, and petitioner was not “faced with the prosecutorial forces of organized society.” Instead, he stood in front of a “ ‘little glass window,’ ” filled out various forms, and was read his Miranda rights. Brief for Respondent 5. The State had not committed itself to prosecute — only a prosecutor may file felony charges in Texas, see Tex. Code Crim. Proc. Ann., Arts. 2.01, 2.02 (Vernon 2005), and there is no evidence that any prosecutor was even aware of petitioner’s arrest or appearance. The adverse positions of government and defendant had not yet solidified — the State’s prosecutorial officers had not yet decided whether to press charges and, if so, which charges to press. And petitioner was not immersed in the intricacies of substantive and procedural criminal law — shortly after the proceeding he was free on bail, and no further proceedings occurred until six months later when he was indicted.
Moreover, the Court’s holding that the right to counsel attaches at an initial appearance is untethered from any interest that we have heretofore associated with the right to counsel. The Court has repeatedly emphasized that “[t]he purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights.” Johnson, 304 U. S., at 465. The “core purpose” of the right, the Court has said, is to “assure ‘Assistance’ at trial, when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.” United States v. Ash, 413 U. S. 300, 309 (1973). The Court has extended *235 the right to counsel to pretrial events only when the absence of counsel would derogate from the defendant’s right to a fair trial. See, e. g., Wade, 388 U. S., at 227.
Neither petitioner nor the Court identifies any way in which petitioner’s ability to receive a fair trial was undermined by the absence of counsel during the period between his initial appearance and his indictment. Nothing during that period exposed petitioner to the risk that he would be convicted as the result of ignorance of his rights. Instead, the gravamen of petitioner’s complaint is that if counsel had been appointed earlier, he would have been able to stave off indictment by convincing the prosecutor that petitioner was not guilty of the crime alleged. But the Sixth Amendment protects against the risk of erroneous conviction, not the risk of unwarranted prosecution. See Gouveia, 467 U. S., at 191 (rejecting the notion that the “purpose of the right to counsel is to provide a defendant with a preindictment private investigator”).
Petitioner argues that the right to counsel is implicated here because restrictions were imposed on his liberty when he was required to post bail. But we have never suggested that the accused’s right to the assistance of counsel “for his defence” entails a right to use counsel as a sword to contest pretrial detention. To the contrary, we have flatly rejected that notion, reasoning that a defendant’s liberty interests are protected by other constitutional guarantees. See id., at 190 (“While the right to counsel exists to protect the accused during trial-type confrontations with the prosecutor, the speedy trial right exists primarily to protect an individual’s liberty interest,” including the interest in reducing the “ ‘impairment of liberty imposed on an accused while released on bail’ ”).
IV
In sum, neither the original meaning of the Sixth Amendment right to counsel nor our precedents interpreting the *236 scope of that right supports the Court’s holding that the right attaches at an initial appearance before a magistrate. Because I would affirm the judgment below, I respectfully dissent.

 The Court also relies on McNeil v. Wisconsin, 501 U. S. 171 (1991), to support its assertion that the right to counsel attaches upon an initial appearance before a magistrate. Ante, at 203. But in McNeil, the Court expressed no view whatsoever on the attachment issue. Rather, it noted that the issue was “undisputed,” and “accept[ed] for purposes of the present case, that... [the defendant’s] Sixth Amendment right had attached.” 501 U. S., at 175. We do not ordinarily give weight to assumptions made in prior cases about matters that were not in dispute.

 The Court asserts that Jackson’s “conclusion was driven by the same considerations the Court had endorsed in Brewer,” namely, that “by the time a defendant is brought before a judicial officer, is informed of a formally lodged accusation, and has restrictions imposed on his liberty in aid of the prosecution, the State’s relationship with the defendant has become solidly adversarial.” Ante, at 202. But Jackson said nothing of the sort.
Moreover, even looking behind the opinion, Jackson does not support the result the Court reaches today. Respondent Bladel entered a “not guilty” plea at his arraignment, see Brief for Petitioner in Michigan v. Bladel, O. T. 1985, No. 84-1539, p. 4, and both Hamilton v. Alabama, 368 U. S. 52 (1961), and White v. Maryland, 373 U. S. 59 (1963) (per curiam), had already held that a defendant has a right to counsel when he enters a plea. The Court suggests that this fact is irrelevant because the magistrate in Bladel’s case “had no jurisdiction to accept a plea of guilty to a felony charge.” Ante, at 203, n. 13. But that distinction does not appear in either Hamilton or White. See Hamilton, supra, at 55 (“Only the *233 presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently”); White, supra, at 60 (“[P]etitioner entered a plea before the magistrate and that plea was taken at a time when he had no counsel”). Thus, the most that Jackson can possibly be made to stand for is that the right to counsel attaches at an initial appearance where the defendant enters a plea. And that rule would not govern this case because petitioner did not enter a plea at his initial appearance.